### NATHAN BUCKNER v. THE STATE.

No. 3920.   Decided December 11, 1907.

**Murder—Confessions—Legal Custody.**

Where upon trial for murder the evidence showed that an officer had been deputized to hold defendant in custody until the sheriff arrived, and that during said time he made inculpatory statements to the State's witnesses, who contended that they did not see any officer at the time, it was error to admit such testimony. The mere fact that the officer may not have been bodily present, he having legal custody of defendant, would not preclude the conclusion that defendant was under arrest at the time he made the confession.

Appeal from the District Court of Shelby.   Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Stephenson & Davis,* for appellant.—On question of admitting confession where defendant was under arrest:   State v. Wool, 3 S. W. Rep., 338; State v. Noland, 9 Texas Crim. App., 419.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at lifetime imprisonment.

After appellant killed the deceased he was arrested by an officer and

placed in the custody of Trav Johnson. While he was in said custody, J. M. McCary and Porter Belcher went to appellant's house where he was under arrest. According to the testimony of Belcher the following conversation occurred: Porter Belcher said to appellant as he walked up to appellant's house: "Nath, what in the very devil got the matter with you fellows?" Appellant replied, "Once in awhile a man has to be killed, and to-day come time to kill one." McCary thereupon stated, "He has made a botch of it, he didn't kill him good." Defendant replied, "If I had known I had not broke his neck I would have shot him again." The witness states that he did not recollect whether Trav Johnson was down at defendant's house when he and Porter came down there or not. If he was he didn't see him. Johnson was not there when the above conversation occurred. Iverson Matthews, the officer above alluded to, testified that he was deputy sheriff at the time appellant killed deceased and arrested him when he first went to his (appellant's) house. "I kept him in charge myself awhile and they got to talking around right sharply, and I didn't want to carry him up to where the other folks were and I got Trav Johnson to take him. I arrested defendant at his house." According to the testimony of Trav Johnson, after he got charge of the defendant he remained with him the balance of the day until he was taken to the county jail. When the testimony of the witnesses, McCary and Porter Belcher, was introduced, as above detailed, the defendant's counsel did not know that appellant was under arrest, and the evidence having developed that he was in custody and having been arrested for the shooting of Treadwell, appellant made a motion to exclude the evidence of McCary, it not being shown that appellant's statement was in writing and signed by him, or that he had been warned by any one that the statement that he might make could be used against him; whereupon the court had McCary recalled, and the following questions and answers were taken: "At the time you spoke of yesterday when you was at Nathan Buckner's house, you and Porter Belcher were there and had this talk with the defendant, Nathan Buckner, that you detailed on yesterday, in which he spoke of the killing. I don't remember just what you said about whether Trav Johnson was there or not. A. I said if he was there I never saw him. Q. Was any officer present? A. Just about the time the conversation closed between us and a little before, Iverson Matthews came to the gate and called Nathan Buckner out. Q. Was that just after the conversation closed? A. Yes, sir; they went off up the road and we got up and went home. Q. Matthews was deputy sheriff at the time, was he? A. Yes, sir. Q. Did you see anything about the place at he time you were talking with him and while there with him that indicated he was under arrest or restraint of any kind? A. No, sir." The above facts show however, or at least raise the issue that appellant was under arrest. As stated, the deputy sheriff arrested appellant and placed him in the custody of Trav Johnson. Johnson swears he was present all the time and heard no such conversation as above detailed. The court approves

the bill with the following explanation: "That I acted upon the assumption that if the jury believed Trav Johnson was present, then they would also necessarily believe his statement that defendant made no such statement as was imputed to him by State's witnesses McCary and Fletcher; if they believed said State's witness' statement that Johnson was not present when this conversation took place, then there was no evidence that defendant was in actual custody at the time in question. Therefore my conclusion was that the issue presented is not whether he was in custody when the statement imputed to him was made, but is rather, whether he made such statement at a time when Trav Johnson was not present, and if so he was not in custody, and whether he made such statement depends upon the credibility of said State's witnesses, and they do not locate it at a time when Johnson was present but distinctly at a time when they say he was not present." The mere fact that Johnson may not have been bodily present, he having legal custody of appellant, would not preclude the fact or conclusion that he was under arrest at the time said statement was made, if it was made; being under arrest when so made, it could not be admitted, and it was reversible error to so admit same. We do not understand the law to be that an officer must be in bodily presence of a prisoner in order to have him under arrest. The uncontradicted evidence, as we understand this bill, shows that appellant was in custody, in contemplation of law, of Trav Johnson, who had been deputized by the sheriff to hold him in custody until the sheriff could take him. It then becomes an immaterial issue whether Johnson was bodily present or not; however, he swears he was, and whether he was or not, we hold that the defendant was in legal custody at the time the statement was made. On another trial, if the evidence should show that Johnson had released appellant, then, of course, he would not be under arrest, but the undisputed record before us shows that he was. It follows, therefore, that the court committed error in not excluding the testimony from the consideration of the jury.

Appellant also presents a motion for continuance in this case, which we do not deem necessary to review, however, in view of the fact that the case is reversed upon the above discussed question.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Henderson, Judge, absent.