STATE OF NEBRASKA, APPELLANT, V. JOHN WESLEY SMITH, APPELLEE.

167 N. W. 2d 568

Filed May 2, 1969.  No. 37089.

Robert E. Richards and Everett O. Richards, for appellant.

Gregory J. Beal, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

Defendant was charged in the district court for Deuel County with unlawfully possessing or having under his control a narcotic drug or drugs. The trial court directed a verdict of dismissal for want of sufficient evidence. This court granted the application of the county attorney to docket the proceedings for review by this court as authorized by section 29-2315.01, R. R. S. 1943.

During the early morning hours of January 4, 1968, defendant was found stumbling around in a wheatfield about 2 miles west of Big Springs Junction in Deuel County. His hands were frozen and he had the appearance of being intoxicated although there was no odor of liquor on or about him. He was incoherent. He was taken to a hospital in Julesburg, Colorado, where emergency treatment was given his hands. On the way to the hospital in Ogallala, to which defendant was being removed, defendant was asked what he was on or if he was on L.S.D. He stated that he had taken something to keep him awake and nothing more. His automobile had gone into the ditch and came to a stop 75 or 80 feet north of the highway.

About 7:30 a.m., state trooper Webb was directed to investigate the stranded automobile. The car was stuck in the snow and not locked. It bore an Illinois motor vehicle license. Webb opened the door of the car to observe the license and to find out to whom it belonged. He did not enter the car at any time on this occasion. He observed two rolled cigarettes on the console and a clear plastic bag on the seat of the car containing a "green vascilite" substance. After reporting his findings to the Sidney office, Webb took pictures of the inside and outside of the automobile. Upon the arrival of another trooper, Webb went to the hospital in Ogallala to talk to the defendant. The latter identified himself, was told

by Webb that a warrant was being issued for his arrest, and that he was being held for the possession of marijuana. Defendant was then given the Miranda warnings. Webb then questioned the defendant who said that he had never smoked, that he had never used drugs until the day previous when he went on a binge in Chicago, and that he did not know anything about any marijuana being found in his car. Webb then went to Chappell, obtained a search warrant, and searched the automobile in which marijuana was found among defendant's personal effects. Exhibits 4, 5, 6, and 7 were the articles taken from the defendant's automobile under the search warrant.

On June 25, 1968, the case came on for trial before a jury. During the course of the trial and during the presentation of the State's evidence, defendant moved to suppress exhibits 4, 5, 6, 7, 8, and 9 on the ground that such evidence was obtained as the result of an unlawful search and seizure. The trial court sustained the motion and, after the State's rest, dismissed the case for want of evidence. It is the contention of the defendant that the opening of the car door by trooper Webb and thereafter observing the subject exhibits in the car was an unlawful search and that subsequent search of the car under a search warrant was the result of the unlawful opening of the car door requiring the suppression of the evidence subsequently obtained by search warrant. The State contends that the opening of the car door to identify the owner of the car is not an unlawful search and that the exhibits found by search warrant are competent and should not have been suppressed. We limit our discussion to the competency of exhibits 4, 5, 6, and 7.

The evidence in this case is not disputed that trooper Webb was directed to investigate an automobile that had left the highway and had become stranded in a wheatfield 2 miles west of Big Springs Junction. He had no information that a crime had been committed or suspected. He looked the car over and, finding it un-

locked, he opened the door to determine where and to whom the car was registered. He at no time entered the car. In opening the door for the purpose stated, which is a usual procedure under such circumstances, he saw the rolled cigarettes and bag of green substance as before stated. A search warrant was later obtained and a search of the car was made. The important phase of this case is that Webb proceeded to the location of the car without any information that a crime had been committed. He was not looking for evidence of any crime, actual or suspected. He opened the car door to examine the license solely to secure the name of the registered owner, a common function of a police officer under such circumstances. He did not come to the car to search for anything and, in the course of a recognized duty, observed the contraband in the car in plain sight. There is not an iota of evidence to indicate that he opened the car door for the reason stated as a subterfuge to find incriminating evidence. The issue is whether the opening of the door under such circumstances constituted a search, or, if it was, was it reasonable.

The state and federal Constitutions prohibit only unreasonable searches and seizures. Cotton v. United States, 371 F. 2d 385 (1967); United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653.

In the Cotton case, it was held under the circumstances of that case that the mere opening of a car door was not an unlawful search or, in any event, not an unreasonable one. The court said: "Officer Pearns' check of the identification number on the door post, which involved opening the door, was not, we think, an unlawful search. * * * For reasons stated below, we do not think that the mere opening of the door of the car for the purpose of making such a record was, under the circumstances, a search, but if it was, the circumstances under which it was done make that search an entirely reasonable one." See; also, Weaver v. United States, 374 F. 2d 878 (1967).

We conclude that under the facts of the instant case the opening of the car door to examine the motor vehicle license was not a search, and, as the cases say, if it was a search, it was not an unreasonable one. The defendant devotes a large share of his brief to the argument that there was no probable cause for making the alleged search. The holding that the opening of the car door under the circumstances was not a search, or, at least, not an unreasonable one, precludes the necessity for a discussion of that point.

It is clear from the record that if Webb observed the rolled cigarettes and marijuana in the car in plain sight under the circumstances herein related, he was competent to testify to such facts even though they provided the basis for the search warrant subsequently issued.

It is the rule that objects falling within the plain view of an officer who has a right to be in the position to have such view does not constitute a search. In Harris v. United States, 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067, the court said: "The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. * * * The precise and detailed findings * * * were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances. * * * Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." In People v. Mallory, 2 Mich. App. 359, 139 N. W. 2d 904, the court put it this way: "There is nothing in this record to support defendant's claim of illegal search and seizure. The evidence defendant sought to suppress was located not by

search but by the officer's senses." See, also, State v. Dillwood, 183 Neb. 360, 160 N. W. 2d 195; State v. Putnam, 178 Neb. 445, 133 N. W. 2d 605.

It is well established that it is not a search to observe what is open and patent either in daylight or artificial light. In the instant case, trooper Webb opened the door of the car for a lawful purpose. He saw the contraband in plain sight. Out of an abundance of caution, he did not seize it but proceeded to obtain a search warrant. Exhibits 4, 5, 6, and 7 were the product of what he found by the use of his natural senses. The exhibits were not the product of an unreasonable search and the trial court was in error in suppressing them as evidence in the case.

It is the contention of the State that the motion to suppress exhibits 4, 5, 6, and 7 was erroneously sustained during the trial for the reason that an identical motion to suppress exhibits 4, 5, 6, and 7 was made and overruled more than 10 days previous to the trial. The method and effect of an order suppressing evidence is contained in section 29-822, R. R. S. 1943. The foregoing statute provides as follows: "Any person aggrieved by an unlawful search and seizure may move for return of the property so seized and to suppress its use as evidence. The motion shall be filed in the district court where a felony is charged and may be made at any time after the information or indictment is filed, and must be filed at least ten days before trial or at the time of arraignment, whichever is the later, unless otherwise permitted by the court for good cause shown. * * * Unless claims of unlawful search and seizure are raised by motion before trial as herein provided, all objections to use of the property as evidence on the ground that it was obtained by an unlawful search and seizure shall be deemed waived; Provided, that the court may entertain such motions to suppress after the commencement of trial where the defendant is surprised by the possession of such evidence by the state, and also may in its discretion

then entertain the motion where the defendant was not aware of the grounds for the motion before commencement of the trial. In the event that the trial court entertains any such motion after the commencement of trial, the defendant shall be deemed to have waived any jeopardy which may have attached."

The motion to suppress exhibits 4, 5, 6, and 7 was made at the trial on June 25, 1968. On April 19, 1968, defendant filed a motion to suppress the evidence obtained as a result of an unlawful search and seizure. The factual situation is the identical one raised at the trial. After notice and hearing, the trial court on May 6, 1968, overruled the first motion to suppress. The incident involved being identical in the motion of June 25, 1968, with that recited in the motion of April 19, 1968, defendant was not surprised when the evidence was offered at the trial and he was fully aware of the grounds for the motion before the commencement of the trial at least as early as April 19, 1968. It is argued by the State that under the circumstances of the instant case, that the trial judge having determined the identical issue more than 10 days before the trial that the evidence sought to be suppressed was admissible, he is obligated to admit the evidence on the trial.

It is clearly the intention of section 29-822, R. R. S. 1943, that motions to suppress evidence are to be ruled on and finally determined before trial, even to permit an appeal before trial from an order suppressing evidence unless within the exceptions contained in the statute. We cannot, however, bring ourselves to hold that such an interpretation of the statute is paramount to the long-recognized right of trial courts to correct their errors during term time. It will be noted that an appeal under section 29-824, R. R. S. 1943, is authorized from an order suppressing evidence, but not from an order refusing to suppress evidence. Defendant therefore cannot be said to have lost his rights by a failure to appeal from his motion to suppress for he has no such right. A waiver

of objections to evidence on the ground that it was obtained by an unreasonable search occurs only when no objection is made more than 10 days before the trial, unless the exceptions to the 10-day provision apply. Here the defendant did object by filing a motion to suppress more than 10 days before trial and the waiver provision has no application. We conclude that section 29-822, R. R. S. 1943, intends, unless within the exceptions contained in the statute, that motions to suppress evidence should be finally determined before trial, but that a trial court is not precluded from correcting errors at the trial. The effectiveness of the statute to accomplish its intended purpose necessarily rests in the good judgment of the trial court in avoiding abuse of the statutory provisions in denying, by this means, the State's review of an order suppressing evidence as authorized by section 29-824, R. R. S. 1943. We do not intend to infer that the trial court in this case did not act in the utmost good faith in suppressing evidence at the trial even though we reach a different conclusion.

We think the trial court was in error in sustaining the motion to suppress exhibits 4, 5, 6, and 7 at the trial. To this extent the exceptions of the State are sustained.

EXCEPTIONS SUSTAINED.