STATE OF NEBRASKA, APPELLANT, V. RICHARD J. VAIDA, APPELLEE.

*510 N.W.2d 389*

Filed April 27, 1993.   No. A-92-567.

C. Jo Petersen, Seward County Attorney, for appellant.

David Kimble, of Souchek & Kimble, for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

Appellee, Richard J. Vaida, was charged in the district court for Seward County with felony motor vehicle homicide, see Neb. Rev. Stat. § 28-306 (Reissue 1989). The trial court found

appellee not guilty after a bench trial. This court granted the application of the county attorney to docket the proceedings for review by this court as authorized by Neb. Rev. Stat. § 29-2315.01 (Supp. 1991). The eight errors assigned in the application have been distilled into four and will be discussed in the section entitled "Challenged Rulings."

## I. FACTUAL BACKGROUND

On April 10, 1991, a motor vehicle crash occurred in Seward, Seward County, Nebraska. The investigating officers found two males at the scene of the crash, Vaida and Jay Hike. Both men were found outside the single vehicle which had been involved in the crash. The only witness to the accident, Marcy Welch, did not see who was driving Hike's car.

Officers approached Vaida, who was outside of the vehicle and was incoherent. Officers also examined Hike, who was outside of the vehicle and was unconscious. Both men were taken by ambulance to the hospital, where Hike was pronounced dead. Officer Michael Prochnow of the Seward Police Department rode in the ambulance with Vaida and Hike and noticed "an odor of alcohol" in the unit. He also observed that Vaida was "very belligerent" and that Vaida's eyes were red and glassy. The nurse who treated Hike upon arrival at the hospital stated that Hike was dead on arrival.

While Vaida was receiving treatment at the hospital, Officer Prochnow stated to him, prior to the giving of any *Miranda* warnings, that "[i]t looks like your chest hurts. What part of the steering wheel hit your chest?" According to Officer Prochnow, Vaida responded, "I think the whole thing." The officer then returned to the accident scene and discussed the accident with another officer, and a determination was made that Vaida had been driving Hike's car. A decision was made at that time to place Vaida under arrest for driving while intoxicated. Officer Prochnow returned to the hospital, placed Vaida under arrest, and read him an implied consent form. While Officer Prochnow was reading this form, Vaida repeatedly said, "Fuck you. I wasn't driving." A blood sample was drawn. The test results reflected that Vaida's blood alcohol content was .203.

Further investigation at the crash scene revealed that the passenger portion of the vehicle involved in the crash had sustained the most damage. The passenger door of the vehicle was torn off during the crash. Additionally, injuries sustained by Hike were consistent with having been thrown from the vehicle and consistent with having been the passenger of the vehicle.

Further, blood taken from the passenger-side visor was compared with the blood of both Vaida and Hike. The results of the test revealed that the blood on the passenger-side visor came from a person with type B blood, that Hike had type B blood, and that Vaida has type O blood. Only approximately .02 percent of Caucasians have the genetic marker combination of the type B blood found on the passenger-side visor and in the blood of Hike.

An accident reconstructionist testified that it was his opinion after reviewing the crash scene, based on his many years of experience and numerous hours of training, that the individual who would die as a result of the crash involving the motor vehicle Vaida was traveling in would be the passenger, Hike, and not the driver of the vehicle. This opinion was based on the course of travel of the vehicle, the points of contact the vehicle had with various objects, the injuries suffered by both parties, and the evidence at the scene.

On May 2, 1991, an information was filed in the district court for Seward County charging Vaida with felony motor vehicle homicide. Prior to trial, Vaida filed a motion to suppress statements made by him to the police. After an evidentiary hearing, the trial court ruled that Vaida's statement to Officer Prochnow at Seward Memorial Hospital was "freely and voluntarily" made and that the motion, as to that statement, was overruled. The trial court also ruled that statements made to another officer at Lincoln General Hospital were made in violation of Vaida's right to counsel, and those statements were suppressed. The latter statements are not the subject of this appeal.

The matter went to bench trial, and a good portion of the testimony was presented to the court in written form, upon the stipulation of the parties. However, Officer Prochnow was one

of the witnesses who did testify. He testified that Vaida had made the statement about the steering wheel striking his chest. Defense counsel objected to this testimony, based on the same argument as presented at the motion to suppress, and the court overruled the objection and admitted the officer's testimony.

After closing arguments, the court took the case under advisement in order to further examine the testimony of Vaida's treating physician and conflicts in the evidence.

On May 21, 1992, the trial judge filed his "Memorandum Verdict and Order." In this document, it is apparent, the court reconsidered its prior decision to overrule Vaida's objection to the statement to Officer Prochnow. The court found in pertinent part:

> [T]he defendant was not free to leave the presence of the officer at the hospital at the time of the statement as required by *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L. Ed. 2nd 229 (1983).
>
> Further, at the time of the statement the defendant was in a great deal of pain, knew or had reason to believe that his friend had been killed in the accident and certainly was under a great deal of emotional duress. Defendant's statement was not the product of his free and rational choice as required by *Mincey v. Arizona,* 437 U.S. 385, 57 L. Ed. 2nd 290, 98 S.Ct. 2408 (1978).
>
> Under these facts and circumstances I cannot conclude that the defendant's statement to Officer Prochnow was freely and voluntarily made as required by *Jackson v. Denno*.

The court then found that Vaida's objection at trial to the admission of the statement should have been sustained and proceeded to analyze the case while disregarding the now suppressed statement. The court held that the remainder of the evidence did not support a finding, beyond a reasonable doubt, that Vaida was the driver of Hike's car. Therefore, the court entered a not guilty verdict and dismissed the case with prejudice.

## II. EFFECT OF THIS REVIEW

This is an appeal by a county attorney pursuant to

§ 29-2315.01. That statute states in part:

> The county attorney may take exception to any ruling or decision of the court made during the prosecution of a cause by presenting to the trial court the application for leave to docket an appeal to the Court of Appeals or the Supreme Court with reference to the rulings or decisions of which complaint is made.

Neb. Rev. Stat. § 29-2316 (Supp. 1991) sets out the effect of the appellate court's ruling pursuant to § 29-2315.01:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the Court of Appeals or the Supreme Court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the Court of Appeals or the Supreme Court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the county attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the Court of Appeals or the Supreme Court pursuant to subsection (2) or (3) of section 24-1106 or section 24-1107.

### III. CHALLENGED RULINGS

This court is mindful of the fact that this case involved the circumstance of a trial to the bench and not to a jury. Our rulings are made in light of that fact and should not be interpreted as applying to a jury trial. The latter situation is not before us, and therefore, we do not decide the issue in that context.

### 1. MOTION TO SUPPRESS PROCEDURE

The State contends that the trial court's action in reconsidering its ruling on Vaida's motion to suppress constitutes " 'trial error,' " and that, therefore, the cause

should be remanded for a new trial. Brief for appellant at 12. The State cites no case, nor can we find any, to support the State's position that Vaida may be retried after he has been found not guilty.

The State's right to appeal is not without limitations. Its right to appeal suppression rulings regarding statements is based on Neb. Rev. Stat. § 29-116 (Supp. 1991), which reads:

In addition to any other rights of appeal, the state shall have the right to appeal from an order granting a motion for the suppression of statements alleged to be involuntary or in violation of the fifth or sixth amendments of the Constitution of the United States in the manner provided in this section. When such motion has been granted in the district court, the Attorney General or the county attorney or prosecuting officer with the consent of the Attorney General may file his or her application with the Clerk of the Supreme Court asking for a summary review of the order granting the motion. The review shall be made by a judge of the Court of Appeals at chambers upon such notice, briefs, and argument as the judge directs, after which such judge shall enter his or her order affirming, reversing, or modifying the order submitted for review, and upon any trial on the general issue thereafter, the parties and the trial court shall be bound by such order. Upon conviction after trial the defendant may on appeal to the Court of Appeals challenge the correctness of the order by the judge.

The State argues that the trial court's action in this case, suppressing the contested statement after submission of all the evidence, denies the State its statutory right to appeal. It does. However, there is precedent for this, and we can find no authority to the contrary. In *State v. Smith*, 184 Neb. 363, 167 N.W.2d 568 (1969), a defendant moved to suppress evidence prior to trial pursuant to Neb. Rev. Stat. § 29-822 (Reissue 1989), a statute which is very similar to Neb. Rev. Stat. § 29-115 (Reissue 1989), except that it regards physical evidence, not statements. The trial court overruled the motion. During trial, the defendant again moved to suppress evidence on the same grounds. The trial court sustained the motion and dismissed the

case. On appeal, the State argued that the trial court, having determined prior to trial that the evidence was admissible, was obligated to admit the evidence at trial. The Nebraska Supreme Court disagreed, holding:

> It is clearly the intention of section 29-822, R. R. S. 1943, that motions to suppress evidence are to be ruled on and finally determined before trial, even to permit an appeal before trial from an order suppressing evidence unless within the exceptions contained in the statute. We cannot, however, bring ourselves to hold that such an interpretation of the statute is paramount to the long-recognized right of trial courts to correct their errors during term time. . . . We conclude that section 29-822, R. R. S. 1943, intends, unless within the exceptions contained in the statute, that motions to suppress evidence should be finally determined before trial, but that a trial court is not precluded from correcting errors at the trial. The effectiveness of the statute to accomplish its intended purpose necessarily rests in the good judgment of the trial court in avoiding abuse of the statutory provisions *in denying, by this means, the State's review of an order suppressing evidence as authorized by section 29-824, R. R. S. 1943.*

(Emphasis supplied.) *State v. Smith*, 184 Neb. at 369-70, 167 N.W.2d at 572.

In other words, a trial court may, in its good judgment, correct its pretrial ruling on a motion to suppress, even though such a correction results in denial of the State's opportunity to appeal the decision to suppress the evidence. The same reasoning should be applied to Vaida's case involving §§ 29-115 and 29-116. As long as the trial court used "good judgment," it was entirely proper to reconsider its ruling on the motion to suppress, even if by doing so the court foreclosed the State's opportunity to appeal.

The Nebraska Supreme Court in *State v. Pope*, 192 Neb. 755, 224 N.W.2d 521 (1974), iterated the rule pronounced in *Smith*, recognized the fact that the trial court may correct its earlier ruling on a motion to suppress, and again recognized that the State's right to appeal may be defeated by these rulings

being made during trial. This is still the law of Nebraska. Therefore, the procedure followed by the trial court in attempting to correct what it believed was an earlier erroneous ruling was not error.

## 2. WAIVER OF DOUBLE JEOPARDY UNDER § 29-115

The State also argues that instead of utilizing the procedure discussed above, the court should have declared a mistrial and ordered Vaida to stand trial a second time. The State relies on § 29-115, which states:

> Any person aggrieved by a statement taken from him or her which is not a voluntary statement, or any statement which he or she believes was taken from him or her in violation of the fifth or sixth amendments of the Constitution of the United States, may move for suppression of such statement for use as evidence against him or her. The suppression motion shall be filed in the district court where a felony is charged and may be made at any time after the information or indictment is filed, and must be filed at least ten days before trial, unless otherwise permitted by the court for good cause shown. Unless claims of a statement being involuntary or taken in violation of the fifth or sixth amendments of the Constitution of the United States are raised by motion before trial as provided in this section, all objections to the use of such statements as evidence on these grounds shall be deemed waived, except that the court may entertain such motions to suppress after the commencement of trial when the defendant is surprised by the introduction of such statements by the state, and also the court in its discretion may entertain motions to suppress such statements when the defendant was not aware of the grounds for any such motion before the commencement of trial, or in such situations as the court deems that justice may require. *In the event that the trial court entertains any such motion after the commencement of trial, the defendant shall be deemed to have waived any jeopardy which may have attached.* None of the foregoing shall affect the right of the defendant to present the question of

the voluntariness of the statement, or the question of whether the proper constitutional safeguards were given to any defendant either in custody or otherwise significantly deprived of his or her liberty, for the consideration of the fact finder at trial.

(Emphasis supplied.)

It does not appear that this particular argument was presented to the Nebraska Supreme Court in *Smith* or *Pope*, although this "waiver language" existed in § 29-822. The State contends that the emphasized language "clearly states that a defendant has waived any jeopardy upon the court considering a suppression of statements after commencement of trial." Brief for appellant at 13.

Vaida concedes in his brief that

if, after his trial commenced, the court entertained his Motion to Suppress and thereafter declared a mistrial, dismissed the case without prejudice, or took any other action *short of acquittal*, he would not be able to prevail on an argument that a second trial would subject him to double jeopardy.

(Emphasis in original.) Brief for appellee at 8-9.

We need deal only with the situation of acquittal, since that is the situation before us. In *Sanabria v. United States*, 437 U.S. 54, 64, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978), the U.S. Supreme Court stated:

In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That " '[a] verdict of acquittal . . . [may] not be reviewed . . . without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." [Citations omitted.] The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation."

See, also, *Fong Foo v. United States*, 369 U.S. 141, 82 S. Ct. 671, 7 L. Ed. 2d 629 (1962). There are a few narrow exceptions to the above rule, none of which apply in this case. See *Sanabria*

*v. United States, supra.*

It is important to note that the State has cited no case law, and we have found none, from any jurisdiction, which holds that a defendant may be retried after an acquittal. The State cites several cases which held that it did not violate the Double Jeopardy Clause to retry a defendant after a conviction was overturned on appeal. Those cases have no application to Vaida's case because he was acquitted. The fairness that results from making a distinction between retrial after conviction as opposed to retrial after acquittal is readily apparent and is demanded by the state and federal Constitutions. We find no error by the trial judge regarding this issue.

### 3. ORDER SUPPRESSING "PROCHNOW STATEMENT"
#### (a) Voluntariness of Statement

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Masat*, 239 Neb. 849, 479 N.W.2d 131 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992).

In deciding whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992).

Determinations of voluntariness are based upon an assessment of all the circumstances and factors surrounding the occurrence when the statement was made. A determination that a confession was made voluntarily will not be overturned on appeal unless clearly wrong. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991).

In reviewing the trial judge's ruling suppressing the statement given to Officer Prochnow, it appears to be in the interest of judicial economy of time and resources to dispose of this issue on the ground of voluntariness, rather than the "custodial interrogation" issue. The trial court expressed clearly its factual

findings and conclusions regarding the voluntariness question:

> [T]he defendant was not free to leave the presence of the officer at the hospital at the time of the statement . . . .
>
> Further, at the time of the statement the defendant was in a great deal of pain, knew or had reason to believe that his friend had been killed in the accident and certainly was under a great deal of emotional duress. Defendant's statement was not the product of his free and rational choice as required by *Mincey v. Arizona,* 437 U.S. 385, 57 L. Ed. 2nd 290, 98 S.Ct. 2408 (1978).
>
> Under these facts and circumstances I cannot conclude that the defendant's statement to Officer Prochnow was freely and voluntarily made . . . .

In *Mincey v. Arizona*, 437 U.S. 385, 397-98, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), the U.S. Supreme Court held:

> Statements made by a defendant in circumstances violating the strictures of *Miranda* v. *Arizona, supra,* are admissible for impeachment if their "trustworthiness . . . satisfies legal standards." [Citations omitted.] But any criminal trial use against a defendant of his involuntary statement is a denial of due process of law "even though there is ample evidence aside from the confession to support the conviction." [Citations omitted.] If, therefore, Mincey's statements to Detective Hust were not " '*the product of a rational intellect and a free will,*' " [citations omitted], his conviction cannot stand.

(Emphasis omitted.) (Emphasis supplied.)

In *Mincey*, the defendant was seriously wounded in a shoot-out with drug agents. While at the hospital, he was questioned by a detective and gave incriminating answers. The U.S. Supreme Court found as follows:

> It is hard to imagine a situation less conducive to the exercise of "a rational intellect and a free will" than Mincey's. He had been seriously wounded just a few hours earlier, and had arrived at the hospital "depressed almost to the point of coma," according to his attending physician. Although he had received some treatment, his condition at the time of Hust's interrogation was still sufficiently serious that he was in the intensive care

unit. . . . He was, in short, "at the complete mercy" of Detective Hust, unable to escape or resist the thrust of Hust's interrogation.

*Mincey v. Arizona*, 437 U.S. at 398-99.

While Vaida's plight in the hospital may not have been as serious as Mincey's, we cannot say that the trial judge's ruling, in finding that the statement was not voluntarily made, is clearly erroneous. Having decided that the court was not clearly wrong in determining that the statement was not voluntarily made, we need not address the *Miranda* question raised by appellant.

### 4. SUFFICIENCY OF THE EVIDENCE

Appellant suggests in its brief that "there is sufficient evidence to find the Appellee guilty beyond a reasonable doubt" and requests that we review the judge's determination to the contrary. Brief for appellant at 28.

Section 29-2316 defines the scope and purpose of our review in error proceedings. That purpose is to provide an authoritative exposition of the law for use as precedent in similar cases which may subsequently arise. *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976).

The verdict by the trial court is not a question of law and is not within the scope of the error proceeding statute. For that reason, we decline to decide the issue of sufficiency of the evidence in this case.

EXCEPTIONS OVERRULED.