FRED HAFFKE, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

30 N. W. 2d 462

Filed January 2, 1948.    No. 32304.

*Francis M. Casey,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Bert L. Overcash,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, and WENKE, JJ., and LIGHTNER, District Judge.

SIMMONS, C. J.

The defendant by information was charged with the offense of operating a motor vehicle upon the public highways while under the influence of alcoholic liquors; two prior convictions were alleged. He was tried, found guilty, and sentenced to confinement for two years in the penitentiary. He appeals. We reverse the judgment of the trial court.

We first are confronted with the contention of the

State that the bill of exceptions was not settled within the time required by section 25-1140, R. S. 1943. This contention is based on the proposition that the term of court at which the case was tried adjourned sine die June 9, 1947, and that the bill was served on the county attorney September 5, 1947, 87 days after the adjournment of the court. However, the bill shows the receipt of the county attorney for examination and amendment dated "5th, 1947" and that it was returned dated "8th, 1947" and settled the "8th day of September, 1947 * * * subject to objections made herein by the County attorney that the same was submitted within 80 days from the adjournment sine die June 9 1947." The State asks that we assume that the bill was served on the 5th day of September, hence was not served within 80 days, and accordingly the State contends the only question before us is the sufficiency of the pleadings to sustain the judgment.

Two facts appear: First, that the date of service is indefinite; and, second, that the county attorney when served did not object that the service was without time. The presumption is in favor of the validity of the service. It is sufficient to sustain the bill that it does not appear that the service was not within the time allowed. 4 C. J. S., Appeal and Error, § 881, p. 1385; Bank of Orland v. Finnell, 133 Cal. 475, 65 P. 976.

The evidence of the State briefly summarized is this: Late the afternoon of March 4, 1947, two members of the State Highway Patrol noticed a car being driven north on the highway; it did not maintain its position on the right side of the road, but moved over to the left side and back to the right side several times; they stopped the car; defendant was driving it; they smelled intoxicating liquor on defendant's breath; defendant was at first happy, jovial, and friendly, and later, after having been arrested, was silent and crying; when defendant got out of the car he was unsteady on his feet, and did not walk in a straight line; defendant told them he had

had "two shots" to drink—large ones; and in their opinion he was under the influence of intoxicating liquors.

One of the State's witnesses, who drove the defendant's car from the scene, testified that the car had a "play" in the steering wheel, and "You had to be very careful to allow for that play, or you would drift from one side of the road to the other."

The State offered the records of two previous convictions, and they were received in evidence.

The defendant's evidence is that on the day in question, he had been at home, had gone downtown in the afternoon to buy some bread, had had a glass of beer, driven home, and was on his way to get his son at a sand pit when he was arrested. Witnesses who saw him a short time before the event testified that he was not then under the influence of intoxicating liquors. The evidence also discloses that he was under a doctor's care and had been taking medicine the day in question. A qualified physician testified that on March 12, 1947, he examined defendant; that he had high blood pressure; that it would produce symptoms of dizziness and lack of coordination. Defendant testified that as a result of an old fracture of both legs he wobbled when starting to walk after sitting awhile.

Defendant also offered evidence as to the operation of the car. Defendant offered a witness who testified that he was acquainted with the mechanical apparatus of cars and had worked on them; that on the Sunday following the incident he took the steering apparatus apart. He then was asked if he made "any discoveries." Objection was made that the time was too remote. The court sustained the objection. He then testified that the car was in the same shape as it was on the day of the arrest; and that there had been no mechanical work done on the car between March 4th and the following Sunday, when he did the work on the car. He next was asked what he discovered when he took the apparatus apart. The court on its own motion inter-

posed: "I already ruled on that * * *." The defendant then offered to prove that it was discovered that the bushings were worn and that it was impossible for the automobile to be operated in a straight line. The county attorney interposed an additional objection that it called for an opinion of the witness and that no foundation had been laid. The court sustained the objection on the ground that it was too remote and no foundation had been laid.

The defendant's first assignment of error argued is that the evidence is insufficient to sustain a conviction. We think the evidence sufficient to go to the jury, and, if believed, sufficient to sustain a conviction as to the offense charged on the day in question. The rule is: "This court will not interfere with a verdict of guilty in a criminal case which is based upon conflicting evidence unless it is so lacking in probative force that we can say as a matter of law that it is insufficient to support a finding of guilt beyond a reasonable doubt." Severin v. State, 146 Neb. 506, 20 N. W. 2d 377.

The question then comes: Was prejudicial error committed in the trial of the cause?

It is to be noted that one of the circumstances relied upon by the State to assist in establishing guilt is the evidence that the car driven by defendant was going from one side of the road to the other as it moved forward. It was that circumstance that first directed the attention of the patrolmen to the car. It is the theory of the State that the movement of the car was the result of the claimed drunken condition of the driver. It is the theory of the defense that it was caused by the mechanical condition of the car. Evidence was admitted tending to show that the car "shimmied," and that there was play in the steering wheel which required a driver to be "very careful" or the car would drift from one side of the road to the other. With the evidence in this situation, defendant offered to prove that the bushings in the steering apparatus were worn and that the defective bushings were the cause of the operating con-

dition of the car. The court, in part on its own motion, refused admission of the evidence. Defendant assigns this as prejudicial error.

The State's position is that the evidence was collateral. We do not agree. The evidence before the jury was to the effect that the car drifted from side to side on the highway. The evidence offered by the defendant went to the question of the cause. To deny the defendant the right to show a cause of the operating condition contrary to the theory as to the cause advanced by the State was prejudicial error.

The defendant complains of the giving of instruction No. 4 as to reasonable doubt. This is substantially the instruction which, in Bennett v. State, 111 Neb. 552, 196 N. W. 905, was held not to be prejudicially erroneous. That decision disposes of this assignment.

The defendant in various ways complains of the giving of instruction No. 3. It is as follows: "If the State has proven by the evidence beyond a reasonable doubt that Fred Haffke, the defendant herein, did willfully and unlawfully operate a motor vehicle upon the public highway of Sarpy County, Nebraska, while under the influence of alcoholic liquor, and you further find from the evidence that he has twice previously convicted for operating a motor vehicle while under the influence of alcoholic liquor, to-wit:

In the District Court of Cass County, Nebraska, on the 13th day of December, 1934; affirmed by the Supreme Court of Nebraska in 1935,
and, in the County Court of Cass County, Nebraska, on the 22nd day of July, 1940,

then you should find the defendant guilty as charged in the information.

"However, if the State has failed to prove each and all of the above elements as above stated beyond a reasonable doubt, then it would be your duty to find the defendant not guilty."

The defendant charges that it is erroneous in that

it does not set out the date of the offense. However, instruction No. 1 set out the date of the alleged offense. The evidence all related to that date. We see no prejudicial error in the omission.

The statute involved is section 39-727, R. S. 1943. It provides: "It shall be unlawful for any person to operate any motor vehicle while under the influence of alcoholic liquor or of any drug. Any person who shall operate any motor vehicle while under the influence of alcoholic liquor or of any drug shall be deemed guilty of a crime, and, upon conviction thereof, shall be punished as follows: * * *." Following this language the statute specifies the penalties to be assessed for a first, a second, and a third or subsequent offense. The penalties increase in severity in each instance. It is noted that the statute defines one crime. It provides different penalties within limits upon conviction depending upon whether the person found guilty had previously been convicted of one or more offenses under the statute. Nowhere in the statute is the jury given any function to perform with reference to the penalty. The penalties are in effect habitual criminal penalties limited to the one "crime" defined in the statute. The defendant contends that the instruction gave the jury no choice, and that the jury should have been allowed to decide whether or not the defendant was guilty of "a lesser crime." The obvious answer is that the statute defines but one crime, that of operating a motor vehicle while under the influence of alcoholic liquor or of any drug.

However, we are not unmindful of our decisions in Wozniak v. State, 103 Neb. 749, 174 N. W. 298, and Osborne v. State, 115 Neb. 65, 211 N. W. 179, wherein under a somewhat similar statute as to penalties, we in effect treated the penalties as elements of the offense, and stated that in the absence of a statute regulating the procedure the fact of a prior conviction must be set forth in the information and established by proper evidence, its sufficiency passed on by the jury, and the

jury should be so instructed that they could determine whether the defendant was guilty of a first, a second or a third offense. Under those decisions the giving of the instruction here was erroneous. The State on the theory of lesser included offenses relies upon the rule stated in Guerin v. State, 138 Neb. 724, 295 N. W. 274: "In absence of instruction requested to that end, it is not error on part of trial court to fail to instruct as to a lesser crime involved in and incident to a greater, as, for instance, assault and battery or simple assault, in connection with forcible rape." There does not appear to have been a request for such an instruction here. However, the Wozniak and Osborne cases were not written on the theory of a lesser included offense, but on the proposition of three separate offenses being charged.

We have also the decision in Burnham v. State, 127 Neb. 370, 255 N. W. 48, wherein section 53-103, Comp. St. 1929, was involved. The effect of the decision is that evidence of the prior conviction was properly to be admitted in evidence and presented a fact for the jury to decide as to whether or not there had been a prior conviction. See, also, Wiese v. State, 138 Neb. 685, 294 N. W. 482.

It now seems to us that as a matter of reasoning the Wozniak and Osborne cases are not applicable here. While it may be argued that section 3288, Comp. St. 1922, and section 53-103, Comp. St. 1929, actually concerned separate offenses, yet there is no doubt but that the statute here involved defines only one crime. It also appears clear to us that when a proper record of a previous conviction has been produced, it then becomes a matter of law for the court to determine, whether or not that record establishes a previous conviction for a violation of a statute. The instruction here involved submits that question of law to the jury.

There is a diversity of opinion respecting the province of court and jury where a charge is made of a

second or subsequent offense. 25 Am. Jur., Habitual Criminals, § 33, p. 279; Annotations, 58 A. L. R. 59, 82 A. L. R. 365, 116 A. L. R. 228.

In the absence of a statute placing upon the jury a duty with reference to the penalty (such as section 28-401, R. S. 1943), the penalty to be imposed after conviction of a criminal offense is not for the jury but for the court to determine within the limits fixed by the statute. Ford v. State, 46 Neb. 390, 64 N. W. 1082; Edwards v. State, 69 Neb. 386, 95 N. W. 1038; Ayres v. State, 138 Neb. 604, 294 N. W. 392. "Except as to crimes having an element of motive, criminal intent, or guilty knowledge, evidence of separate and distinct offenses committed by accused is not admissible." Swogger v. State, 116 Neb. 563, 218 N. W. 416; Henry v. State, 136 Neb. 454, 286 N. W. 338. The reason for these rules and the rules themselves are in conflict with the conclusions announced in the Wozniak, Osborne, Burnham, and Wiese cases.

We accept as sound the reasoning of other courts as herein stated.

"It seems to be the settled law everywhere that the charge and proof of the prior convictions can have nothing to do with the proof and conviction of the offense for which the defendant may be upon trial; that a statement of previous convictions does not change the offense. The jury does not find the person guilty of the previous offenses; they are matters of history and are alleged and proved for the sole purpose of placing the defendant in a class of habitual criminals, and affect the punishment or term of imprisonment to be meted out. * * * Doubtless, the better practice would be to have proof of the previous convictions made to the court, out of the presence of the jury, but the statute of this state does not so provide." (The opinion recites that the statute required the jury to find the fact of the previous convictions.) Sammons v. State, 210 Ind. 40, 199 N. E. 555.

" 'Our statute of 1927 does not create a new offense. It merely prescribes a greater penalty for one who is convicted a second time of the commission of a felony and a still greater penalty for one who is convicted of a felony for the third time. To make his defense to a criminal charge all the accused needs to know is the nature of the crime charged against him and the names of the witnesses with whom he will be confronted in a prosecution therefor. In this state it is no concern of the jury what the penalty for a crime may be, and it is just as well that the jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies. It is also fairer to defendant to keep such matters entirely away from the jury.' " Levell v. Simpson, 142 Kan. 892, 52 P. 2d 372.

"This court has recognized that there is a conflict of authority upon the question in other jurisdictions but has adopted the rule that the prisoner's rights are better protected if evidence of prior convictions is not introduced in connection with the trial of the crime with which he is charged. Under our practice when he is charged and tried for a crime, his previous record may not be used to influence the jury to convict him of the charged crime. The rule may have some exceptions but we are not concerned with such exceptions in this case. It follows, under our procedure, that an accused is not entitled to a trial on the question of whether he has been convicted of other felonies on other occasions. The question whether a man is a habitual criminal involves only the severity of the penalty." Hill v. Hudspeth, 161 Kan. 376, 168 P. 2d 922.

"Previous convictions need not be alleged in the indictment, nor proved upon the trial of the new charge. This to me seems eminently fair to any prisoner. When he is charged and tried for a crime, his previous record may not be used to influence the jury to convict him of that crime. The proof against him is to be the same

as if he were a first offender, unless possibly he takes the stand. But when he is convicted, then comes the question of his sentence, and he is no longer to be treated as a first offender. He may then for the first time be confronted with his record, and sentenced to a severer punishment, as he should be, if it turns out that he has previously transgressed the law. The old practice is still permissible; the indictment, as formerly, may plead the prior convictions, and proof of them may be given at the trial under such pleading, but it is no longer necessary. The indictment may charge only the new offense for which the prisoner is to be tried; on the trial the People will not and cannot offer as part of their case previous convictions. When, however, the trial is over, and the defendant stands convicted, then the previous record must be considered in determining the sentence. Prior convictions logically and in fact have little or nothing to do with proof of the defendant's guilt of a new crime; a man is not guilty of breaking the law merely because he has broken it before; but when the proof shows him to be guilty, then his past acts have much to do with the way he should be treated. The punishment for the second offense is increased because of his apparent persistence in the perpetration of crime and his indifference to the laws which keep society together; he needs to be restrained by severer penalties than if it were his first offense." People v. Gowasky, 244 N. Y. 451, 155 N. E. 737.

"While it is familiar practice to set forth in the indictment the fact of prior conviction of another offense, and to submit to the jury the evidence upon that issue together with that relating to the commission of the crime which the indictment charges, still in its nature it is a distinct issue, and it may appropriately be the subject of separate determination. Provision for a separate, and subsequent, determination of his identity with the former convict has not been regarded as a deprivation of any fundamental right. It was established by statute

in England that, although the fact was alleged in the indictment, the evidence of the former conviction should not be given to the jury until they had found their verdict on the charge of crime. * * * To repeat, the inquiry is not into the commission of an offense; as to this, indictment has already been found and the accused convicted. There remains simply the question as to the fact of previous conviction. And it cannot be contended, that in proceeding by information instead of by indictment there is any violation of the requirement of due process of law. * * * Although the State may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt and thereupon for the imposition of the full sentence prescribed, there is no constitutional mandate which requires the State to adopt this course even where the former conviction is known. It may be convenient practice, but it is not obligatory. This conclusion necessarily follows from the distinct nature of the issue and from the fact, so frequently stated, that it does not relate to the commission of the offense, but goes to the punishment only, and therefore it may be subsequently decided." Graham v. West Virginia, 224 U. S. 616, 32 S. Ct. 583, 56 L. Ed. 917.

Section 23, article IV, of the Constitution, provides for reports to the Legislature of the judges of the Supreme Court of defects in the Constitution and laws. In 1945, the Legislature created the office of Revisor of Statutes, section 49-701, R. S. Supp., 1945, and provided that it shall be his duty "To prepare, prior to each regular session of the Legislature, under the supervision and direction of the Supreme Court, the report of the judges of the Supreme Court as to defects in the Constitution and laws of Nebraska, and to draft in the form of bills proposed legislation to carry out the recommendations contained in the report; * * *." § 49-702, R. S. Supp., 1945.

As a result of the situation shown to exist by the opinion in Jones v. State, 147 Neb. 219, 22 N. W. 2d 710, a recommendation was submitted to the Legislature as to changes in the Habitual Criminal Act. Legislative Journal 1947, p. 169. A bill prepared by the Revisor of Statutes was enacted. In that act the Legislature provided: "Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted, but the fact that the accused is charged with being an habitual criminal shall not be an issue upon the trial of the felony charged and shall not in any manner be disclosed to the jury. If the accused is convicted of a felony and before sentence is imposed, a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. The court shall fix a time for the hearing and notice thereof shall be given to the accused at least three days prior thereto. At the hearing, if the court shall find from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state, or by the United States, the court shall sentence such person so convicted as an habitual criminal." Laws 1947, c. 105, § 1, p. 293.

While the above statute by its terms applies only to the Habitual Criminal Act, yet it announces rules of practice and procedure that, as a matter of sound public policy, should apply to any statute which imposes the duty upon a court to inflict a greater punishment upon the repetition of an offense.

Accordingly, under section 25, article V, of the Constitution, we promulgate the following rule of practice and procedure in criminal cases hereafter tried in all courts. In the absence of a provision placing upon the jury a duty with reference to the penalty, where punishment is sought under any statute defining one crime

and providing for an enhanced penalty upon conviction of a second or subsequent offense: (1) The facts with reference thereto must be alleged in the complaint, indictment or information upon which the accused is prosecuted; (2) the fact that the accused is charged with having committed a second or subsequent offense should not be an issue upon the trial and should not in any manner be disclosed to the jury; (3) if the accused is convicted, before sentence is imposed a hearing should be had before the court without a jury as to whether or not there have been any prior convictions of the accused under the same statute; (4) the accused should be given notice of the time of hearing at least three days prior thereto; and (5) at the hearing, if the court finds from the evidence submitted that the accused has been convicted prior thereto under the same statute, the court should sentence the accused according to the enhanced penalty applicable to the facts found. This rule, of course, does not in any manner limit the application in a proper case of the provisions of section 25-1214, R. S. 1943.

For purposes of clarity we hold that the opinions in Wozniak v. State, *supra;* Osborne v. State, *supra;* Burnham v. State, *supra;* and Wiese v. State, *supra,* to the extent in conflict herewith are no longer applicable.

We do not deem it necessary to determine the assignments of error as to the failure of the court to give a cautionary instruction; permitting the state to withdraw its rest and in receiving additional evidence for the state; and in permitting the state to endorse additional names of witnesses on the information.

The judgment of the trial court is reversed.

REVERSED.

CHAPPELL, J., participating on briefs.