STATE OF NEBRASKA, APPELLANT, V.
RUSSELL R. RUBEK, SR., APPELLEE.
653 N.W.2d 861

Filed November 26, 2002.   No. A-02-155.

490

Tricia Freeman, Chief Deputy Sarpy County Attorney, John E. Higgins, and Brett Charles for appellant.

Gregory A. Pivovar for appellee.

SIEVERS, INBODY, and CARLSON, Judges.

SIEVERS, Judge.

In a question of first impression, we decide whether in a prosecution for violation of a protection order, second offense, the State's burden of proof includes proof of the first violation of the same order. Russell M. Rubek, Sr., was charged in the district court for Sarpy County with violation of a protection order, second offense, and with being a habitual criminal. See Neb. Rev. Stat. §§ 42-924(3) (Reissue 1998) and 29-2221 (Reissue 1995). After the State presented its case against Russell, the trial court sustained Russell's motion for a directed verdict and dismissed the charges, finding that the State failed to prove in its case in chief Russell's previous conviction for violating the same protection order. We sustained the State's motion to docket an error proceeding. While we sustain the State's exception, jeopardy had attached and terminated at trial, so our ruling does not affect Russell's acquittal, but provides guidance for the future.

## FACTUAL BACKGROUND

Because of the nature of this appeal, we use an abbreviated factual statement. Russell and Ginger M. Rubek were husband and wife. On July 28, 2000, the district court for Douglas County granted a domestic abuse protection order pursuant to § 42-924(1)

enjoining Russell from contacting, communicating with, restraining, or otherwise threatening Ginger. The protection order was to remain in effect for a period of 1 year from the date of issuance. On December 5, Russell was convicted in the Douglas County District Court of violation of the protection order.

Ginger testified that on February 15, 2001, between 5 and 6 p.m., she left her home to attend a women's advocate group meeting. She was stopped at a red traffic light when Russell pulled up beside her vehicle in his pickup truck. Ginger testified that she had her passenger window down slightly and that Russell rolled down his window and said, "You bitch, you're going to see what this is all about if I go to jail." Ginger testified that she then immediately drove through the red light, driving on as far as she had to in order to feel she was safe. She stated that she stopped at a Texaco gas station and proceeded to contact the 911 emergency dispatch service from a pay telephone. Ginger testified that Officer Robert Bailey of the Bellevue Police Department arrived within minutes.

Officer Bailey testified that when he met Ginger, she appeared emotionally distraught, holding onto the pay telephone's handset and crying hysterically. Ginger gave Officer Bailey both a verbal and a written statement concerning the alleged altercation. Later that day, Officer Bailey arrested Russell and transported him to the Sarpy County Law Enforcement Center.

## PROCEDURAL BACKGROUND

While the State had previously filed a complaint and an amended complaint, we deal with the information filed on May 3, 2001. The information alleged that Russell committed the offense of violation of a protection order, second offense, pursuant to § 42-924(3) and that he was a habitual criminal pursuant to § 29-2221. On December 20, trial was had in the district court for Sarpy County on the information. Proof of Russell's previous conviction on December 5, 2000, for violation of the same protection order was not presented in the State's case in chief, and after the State rested, Russell moved to dismiss.

Addressing Russell's motion, the trial court stated that it was "going to take [Russell's] motion to dismiss under advisement and proceed with the trial" due to certain concerns it had with

the motion. The State then made a motion to reopen its case in chief, which motion the trial court denied, stating, "[It] would be grossly prejudicial to [Russell]. I have some concerns, and I'm going to tell you what it is right now, that I think the state has failed to present a material element of the offense . . . ." The court then proceeded with Russell's case in chief.

After testimony from two defense witnesses, counsel for Russell renewed the motion to dismiss. On December 28, 2001, the district court for Sarpy County issued its opinion and order sustaining Russell's motion for a directed verdict of acquittal. The district court found that proof of a prior violation of the same protection order is a material element of the charged offense of violation of a protection order, second offense, rather than just an enhancement issue, and that the State had failed to prove the element.

The State moved for leave to docket an appeal to this court pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1995), which motion we granted.

## ASSIGNMENTS OF ERROR

The State asserts, summarized and restated, that the district court abused its discretion in (1) determining that proof of a prior violation of the same protection order is a material element of the charge of violation of a protection order, second offense, rather than an enhancement issue and (2) sustaining Russell's motion for a directed verdict without considering whether the evidence was sufficient to show a lesser-included offense, namely violation of a protection order, first offense, a Class II misdemeanor.

## NATURE OF ERROR PROCEEDING

This appeal is before this court as an error proceeding filed by a county attorney pursuant to § 29-2315.01, which states in pertinent part, "The county attorney may take exception to any ruling or decision of the court made during the prosecution of a cause . . . ." According to case law, "the purpose of [appellate] review [under this section] 'is to provide an authoritative exposition of the law for use as a precedent in similar cases which may now be pending or which may subsequently arise.'" *State v. Wilen*, 4 Neb. App. 132, 139, 539 N.W.2d 650,

657 (1995) (quoting *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976)). See, also, *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996); *State v. Taylor*, 179 Neb. 42, 136 N.W.2d 179 (1965); *State v. Vaida*, 1 Neb. App. 768, 510 N.W.2d 389 (1993).

## STANDARD OF REVIEW

■ Statutory interpretation presents a question of law. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Nye v. Fire Group Partnership*, 263 Neb. 735, 642 N.W.2d 149 (2002); *State v. Isham*, 261 Neb. 690, 625 N.W.2d 511 (2001).

■ When the language used in a statute requires interpretation or may reasonably be considered ambiguous, the statute is open to construction. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994). Although a penal statute must be strictly construed, it is to be given a sensible construction, and general terms are to be limited in their construction and application so as to avoid injustice, oppression, or an absurd consequence. *Id.* In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995).

## ANALYSIS

■ The procedures and grounds for the issuance of a protection order are found in Neb. Rev. Stat. § 42-924 et seq. (Reissue 1998). Section 42-924(3), as amended by 2002 Neb. Laws, L.B. 82, provides in relevant part:

Any person who knowingly violates [a protection] order issued pursuant to subsection (1) of this section or section 42-931 after service shall be guilty of a Class II misdemeanor, except that (a) any person convicted of violating such order who has a prior conviction for violating a protection order shall be guilty of a Class I misdemeanor and (b) any person convicted of violating such order who has a prior conviction for violating the same protection order *or*

*a protection order granted to the same petitioner* shall be guilty of a Class IV felony.

(Emphasis supplied.) While the statute was amended in 2002 to add the language in italics, the change is not pertinent to this case and does not affect the precedent we announce here.

We initially look to the statutory provision before us, § 42-924(3)(b) (Reissue 1998), and ask what the Legislature intended. Does it define a separate crime, or does it provide for enhancement so that punishment of a repeat offender can be increased?

In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), the U.S. Supreme Court considered the question of whether a federal statutory provision defined a separate crime or simply authorized an enhanced penalty. The Court in *Almendarez-Torres* looked to the "statute's language, structure, subject matter, context, and history—factors that typically help courts determine a statute's objectives and thereby illuminate its text." 523 U.S. at 228. See, also, *United States v. Wells*, 519 U.S. 482, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997); *Garrett v. United States*, 471 U.S. 773, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); *State v. Joubert, supra.* We look to the same factors here.

At the outset, we note that the statutory subject matter is recidivism. An increased penalty for repetition of a crime "is as typical a sentencing factor as one might imagine." *State v. Werner*, 8 Neb. App. 684, 691, 600 N.W.2d 500, 506 (1999) (citing *Almendarez-Torres v. United States, supra*). Nebraska's appellate courts have consistently interpreted statutes that authorize higher sentences for recidivists as setting forth enhancement factors. See, *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980) (Legislature specifically provided that prior conviction for any second or subsequent offense under Neb. Rev. Stat. § 28-611 (Reissue 1979) (issuing or passing bad checks) enhanced penalty from misdemeanor to Class IV felony); *State v. Werner*, 8 Neb. App. at 691, 600 N.W.2d at 506 (plain language of Neb. Rev. Stat. § 60-6,196 (Reissue 1993) criminalized act of driving under influence of alcohol (DUI), and "fact that the defendant has previously been convicted of DUI is irrelevant to guilt or innocence and is relevant only to the

sentence to be meted out. Indeed, the sole difference between a first, second, or third conviction for DUI is the penalty authorized"). See, § 28-611(2) (Reissue 1995)); *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996) (pursuant to Neb. Rev. Stat. §§ 28-511.01 and 28-518 (Reissue 1995), any second or subsequent conviction of theft or shoplifting enhances punishment from misdemeanor to Class IV felony). See § 28-518(5). See, e.g., *U.S. v. McGatha*, 891 F.2d 1520 (11th Cir. 1990) (federal courts have almost uniformly interpreted statutes that authorize higher sentences for recidivists as setting forth sentencing factors, not as creating new crimes, at least where conduct charged, in absence of recidivism, is independently unlawful).

■ With recidivism as the subject matter in mind, we turn to the language of the statute at issue. In order to prove a violation of § 42-924, the State must prove only three elements: "(1) entry of the protection order pursuant to subsection (1) or (2) of that section, (2) service of the order on the defendant, and (3) knowing violation of the order." *State v. Patterson*, 7 Neb. App. 816, 819, 585 N.W.2d 125, 127 (1998). But, § 42-924(3)(b) provides for an increased penalty for "any person convicted of violating [a protection] order who has a prior conviction for violating the same protection order." The gradation of charges in § 42-924(3) is similar to those in the Nebraska DUI, bad-check writing, and theft or shoplifting statutes previously mentioned. Proof of previous violations of all the aforementioned statutes has been determined to be an enhancement issue, not a required material element to be proved at trial. We see no reason that a similar result should not obtain here.

Russell argues that since the protection order statute "requires that the defendant have violated the same protection order, by proof of a reasonable doubt," § 42-924(3)(b) is a material element that must be shown at trial. (Emphasis omitted.) Brief for appellee at 7. Russell has provided no authority to support this contention; nor have we found any. If the Legislature intended § 42-924(3)(b) to provide for a substantive crime, it would not have used the word "except" before listing the gradation of offenses. The word "except" and the subsequent listing of the charges from Class I misdemeanor to Class IV felony must be given their plain and ordinary meaning, and when the language

is clear, no direct interpretation is necessary. See *State v. Matthews*, 237 Neb. 300, 465 N.W.2d 763 (1991).

The language and its arrangement clearly set forth and define a protection order in § 42-924(1), and they define a crime and set forth one penalty in § 42-924(3), which is subject to an "except[ion]," *id.*, as subsections (3)(a) and (b) provide different penalties if a defendant has prior convictions for violating a protection order.

We also note that "the title of a statute and the heading of a section" are "tools available for the resolution of a doubt" about the meaning of a statute. *Railroad Trainmen v. B. & O. R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947). "A title that contains the word 'penalties' more often, but certainly not always . . . signals a provision that deals with penalties for a substantive crime." *Almendarez-Torres v. United States*, 523 U.S. 224, 234, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). The title of § 42-924 contains the word "penalty."

The Nebraska Supreme Court has also provided guidance in this situation. In *Haffke v. State*, 149 Neb. 83, 30 N.W.2d 462 (1948), the court addressed the issue of whether a previous DUI violation was an enhancement issue or a material element to be proved at trial. In *Haffke*, the court set out the following rule of law:

> Accordingly, under section 25, article V, of the [Nebraska] Constitution, we promulgate the following rule of practice and procedure in criminal cases hereafter tried in all courts. In the absence of a provision placing upon the jury a duty with reference to the penalty, where punishment is sought under any statute defining one crime and providing for an enhanced penalty upon conviction of a second or subsequent offense: (1) The facts with reference thereto must be alleged in the complaint, indictment or information upon which the accused is prosecuted; (2) the fact that the accused is charged with having committed a second or subsequent offense should not be an issue upon the trial and should not in any manner be disclosed to the jury; (3) if the accused is convicted, before sentence is imposed a hearing should be had before the court without a jury as to whether or not there have been any prior convictions of the accused

under the same statute; (4) the accused should be given notice of the time of hearing at least three days prior thereto; and (5) at the hearing, if the court finds from the evidence submitted that the accused has been convicted prior thereto under the same statute, the court should sentence the accused according to the enhanced penalty applicable to the facts found.

149 Neb. at 95-96, 30 N.W.2d at 469. See, also, *Poppe v. State*, 155 Neb. 527, 52 N.W.2d 422 (1952).

Finally, of considerable significance to us is the fact that the trial court's position would in most cases be very unfair to a defendant if § 42-924(3)(b) really set forth a separate crime. The State would be required to prove to the judge or jury in the guilt phase of a case that the defendant previously violated the same protection order. This would cause a prejudicial taint from that evidence—to which defendants would vigorously object. See Neb. Rev. Stat. §§ 27-403 (unfair prejudice) and 27-404 (prior bad acts) (Reissue 1995). Although the case at hand was tried before a judge, placing a prior violation of a protection order before the jury in a future trial runs the risk of conviction simply because the jury would perceive the defendant as a bad person or might infer that the first violation of the order portends a second violation.

■ As Nebraska appellate courts have long recognized, the introduction of evidence of a defendant's prior crimes risks significant prejudice. See *Haffke v. State*, 149 Neb. at 92, 30 N.W.2d at 467 ("'"jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies. It is also fairer to defendant to keep such matters entirely away from the jury"'") (quoting *Levell v. Simpson*, 142 Kan. 892, 52 P.2d 372 (1935)).

■ In conclusion, the Legislature intended to set forth a sentencing factor in § 42-924(3)(b) and not a separate criminal offense. Subsection (3)(b) is an enhancement provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. To hold otherwise would be inconsistent with public policy, case law, and the intent of the statute under which Russell was charged. Thus, proof of the prior violation was not part of the State's burden of

proof in its case in chief, and Russell was incorrectly acquitted on this basis. This holding makes it unnecessary to consider the assignment that the court should have considered the matter from the standpoint of a lesser-included offense.

## EFFECT OF OUR DECISION

As explained above, this is an appeal by a county attorney pursuant to § 29-2315.01. Neb. Rev. Stat. § 29-2316 (Reissue 1995) describes the effect of an appellate court's ruling pursuant to § 29-2315.01: "The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy . . . ."

At oral argument, the State conceded that jeopardy had attached before the trial court dismissed the case; therefore, we need not discuss this matter further. See *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986). Thus, our opinion is for future guidance of the bench and bar.

EXCEPTION SUSTAINED.